IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | 3:16-cr-00051-BR-7 |
| Plaintiff, | ORDER DENYING DEFENDANT SHAWNA COX'S MOTION TO SUPPRESS EYEWITNESS IDENTIFICATION |
| v. | |
| SHAWNA COX, | |
| Defendant. | |

BROWN, Judge.

This matter comes before the Court on Defendant Shawna Cox's Motion (#975) to Suppress Eyewitness Identification.  For the reasons that follow, the Court **DENIES** Cox's Motion.

Cox, proceeding *pro se*, filed her Motion on August 2, 2016, in which she contends the Court should suppress an eyewitness identification made by a witness, JO,[1] in Burns, Oregon, in early January 2016.  The Court held an evidentiary hearing and conducted oral argument regarding Cox's Motion on August 19, 2016.  For the reasons that follow, the Court **DENIES** Cox's Motion (#975) to Suppress Eyewitness Identification.

---

[1] The Court identifies witnesses by their initials because the parties' Witness Lists remain under seal.

1 - ORDER DENYING DEFENDANT SHAWNA COX'S MOTION TO SUPPRESS EYEWITNESS IDENTIFICATION

## FACTUAL BACKGROUND

The only testimony presented by the parties at the August 19, 2016, evidentiary hearing was the testimony of FBI Special Agent Clayton Smith. The Court credits Special Agent Smith's testimony and finds the following facts by a preponderance of the evidence:

On the evening of January 9, 2016, Special Agent Smith met with JO in Burns to speak with JO about a report he made to law enforcement regarding two or three "crazy guys" that JO saw at Malheur National Wildlife Refuge (MNWR) on either January 7 or January 8, 2016, after the alleged occupation of the Refuge began, and who JO thought might become violent. JO is a retired United States Fish and Wildlife Service employee, who previously worked at MNWR.

During his interview with JO, Special Agent Smith asked JO what he observed during his visit to MNWR. JO responded he noticed two or three "crazy guys" at MNWR who he thought might be inclined to become violent. JO also volunteered that he saw five women in the kitchen of one of the buildings at MNWR who were wearing holstered handguns. JO stated he thought the women were not used to wearing holstered handguns because he thought they were walking in an awkward manner.

Special Agent Smith provided JO with a "quick pics" sheet of photographs of individuals who the FBI had identified as being

2 -   ORDER DENYING DEFENDANT SHAWNA COX'S MOTION TO SUPPRESS
      EYEWITNESS IDENTIFICATION

persons who might pose "officer safety" concerns in connection with the occupation of MNWR. Special Agent Smith kept the "quick pics" sheet with him so that he could identify any individual that the FBI suspected of being involved in the occupation of MNWR in the event he encountered any such person in the Burns area.

The "quick pics" sheet was a double-sided, single sheet of paper. The first side contained 30 small photographs of individuals, and the reverse side contained 14 such photographs. Of the 44 total photographs on the "quick pics" sheet, 10 were photos of women. Each individual's name and date of birth was listed below each picture.

Special Agent Smith's purpose in showing the "quick pics" sheet to JO was to see if he could identify the two or three "crazy men" who he saw at MNWR and who he thought might pose a risk of violence. Although JO was unable to identify any of the "crazy men," he spontaneously commented that he saw photos of two of the women who he had observed in the kitchen at MNWR wearing firearms. In particular, while looking at the first page of the "quick pics," JO identified MH and DP as two of the women he observed in the kitchen. When he turned the "quick pics" page over to the second side, however, JO corrected his identification of DP and then pointed out the photo of Defendant Shawna Cox as one of the women he observed wearing a firearm in the kitchen.

3 -   ORDER DENYING DEFENDANT SHAWNA COX'S MOTION TO SUPPRESS
      EYEWITNESS IDENTIFICATION

**DISCUSSION**

As noted, Cox moves to suppress JO's identification of her as one of the women JO observed wearing firearms in the kitchen at MNWR.

**I.   Standards**

To analyze a defendant's motion to suppress an eyewitness identification, a court employs a two-step process.  First, the court must determine whether the procedures employed in the eyewitness identification were "'so [unnecessarily] suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'"  *Perry v. New Hampshire*, 132 S. Ct. 716, 724 (2012)(quoting *Simmons v. United States*, 390 U.S. 377, 384-85 (1968)(bracketed text in original)).  "[D]ue process concerns arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary."  *Perry*, 132 S. Ct. at 724.  "An identification procedure is suggestive when it 'emphasize[s] the focus upon a single individual' thereby increasing the likelihood of misidentification."  *United States v. Montgomery*, 150 F.3d 983, 992 (9th Cir. 1998).  *See also United States v. Carr*, 761 F.3d 1068, 1074 (9th Cir. 2014).  "To determine if an identification procedure was unduly suggestive, the court must examine the totality of the surrounding circumstances."  *Carr*, 761 F.3d at 1074.

4 -   ORDER DENYING DEFENDANT SHAWNA COX'S MOTION TO SUPPRESS
      EYEWITNESS IDENTIFICATION

Second, even when a law-enforcement officer employs procedures that are suggestive and unnecessary, "suppression of the resulting identification is not the inevitable consequence." *Perry*, 132 S. Ct. at 724. In that instance, the court must, nonetheless, determine whether "improper police conduct created a 'substantial likelihood of misidentification.'" *Id.* (quoting *Neil v. Biggers*, 409 U.S. 188, 201 (1972)). "The due process check for reliability . . . comes into play only after the defendant establishes improper police conduct." *Perry*, 132 S. Ct. at 726. When "the 'indicators of [a witness's] ability to make an accurate identification' are 'outweighed by the corrupting effect' of law enforcement suggestion, the identification should be suppressed." *Id.* at 725. When determining whether the identification is, nonetheless, reliable the court considers the following factors:

> (1) the witness's opportunity to view the defendant at the time of the incident; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the defendant; (4) the level of certainty demonstrated by the witness at the time of the identification procedure; and (5) the length of time between the incident and the identification.

*Montgomery*, 150 F.3d at 993.

## II. Analysis

Cox contends Special Agent Smith employed identification procedures that were unduly suggestive because (1) Cox had given interviews and been mentioned in media reports of the occupation

of MNWR, and, therefore, JO's identification of her may have been based on that exposure rather than JO's memory of who he saw at MNWR and (2) the names and photographs listed on the "quick pics" sheet were unduly suggestive because many of the names on that sheet had been publicly connected to the occupation of MNWR.

Cox's arguments fail. There is not any indication in the record that JO observed any media coverage that identified Cox before JO spoke with Special Agent Smith. In any event, even assuming JO had observed Cox in media reports before the identification, the potential that JO's identification of Cox was inspired by that media exposure goes to the reliability of the identification rather than the suggestiveness of the identification procedures.

Moreover, the fact that the "quick pics" sheet listed the names and birth dates of the individuals included on the photospread does not create any risk of suggestiveness in these circumstances. Although Cox is correct that placement of her photograph among the photographs of individuals who were suspected of being involved in the occupation of MNWR could suggest that she, too, was suspected of being involved in the events at MNWR, that conclusion was not the purpose of JO's identification (indeed, Cox does not dispute she was among those at MNWR). Instead JO's spontaneous identification of Cox related to the more specific issue of which individuals among those at

MNWR did JO observe armed in the kitchen. There was nothing about the "quick pics" sheet or the totality of the circumstances in which JO made the spontaneous identification that suggested Cox (as opposed to any of the other nine women on the "quick pics" sheet) was among the women that JO saw in the kitchen.

The Court, therefore, concludes the identification procedures that Special Agent Smith used to identify the three "crazy men" were not unduly suggestive as to Cox, and, therefore, Cox has not demonstrated there was any improper police conduct. Accordingly, in light of all the evidence, the Court must leave to the jury the question whether JO's identification of Cox was reliable. See Perry, 132 S. Ct. at 726.

## CONCLUSION

For these reasons, the Court **DENIES** Cox's Motion (#975) to Suppress Eyewitness Identification.

IT IS SO ORDERED.

DATED this 29th day of August, 2016.

*Anna J. Brown*
ANNA J. BROWN
United States District Judge

7 - ORDER DENYING DEFENDANT SHAWNA COX'S MOTION TO SUPPRESS EYEWITNESS IDENTIFICATION