Tiffany A. Harris   OSB 02318
Attorney at Law
333 SW Taylor St., Suite 300
Portland, Oregon 97204
Tel: (503) 782-4788
tiff@harrisdefense.com

Standby Counsel for Shawna Cox

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>SHAWNA COX.<br><br>    Defendant. | 3:16-CR-00051-BR-7<br><br>MOTION TO COMPEL DISCOVERY REGARDING INFORMANT OR AGENT |

Shawna Cox, by and through standby counsel, Tiffany A. Harris, moves the Court for an order compelling the Government to furnish discovery concerning the identity and other information relating to a government informant / agent who infiltrated the refuge on January 23, 2016 using the alias, "John Killman," and posed as a weapons instructor and tactical trainer. Mr. "Killman" is believed to be the same person who appears in discovery as "CHS 2." As set forth in the detailed proffer below, defendants have established Mr. Killman's status as a percipient witness to the events depicted in Government Exhibit 73 and his role as a participant and *leader* in the firearms training and defensive, military-style maneuvers described in co-defendant Jeff Banta's testimony (and the proffers of others in discovery).

///

///

Various reports provided in discovery, along with defense witness interviews, document the arrival, on January 23, 2016, of a weapons instructor, expert in "hand to hand training" and leader in defensive drills at the refuge. "John Killman"-- as he was known to the refuge occupiers-- spoke with a French or South African accent. His training exercises were described briefly in Jeff Banta's direct testimony, then emphasized during Banta's cross examination. For example, the Government pressed Mr. Banta for details about whether part of the training he received included how to stop an approaching car, flatten its tires with a nail studded hose, forcibly remove the driver, and subject him to interrogation. The point of that line of questioning was two-fold: to suggest that these exercises could yield newfound skills that could be used to secure the refuge through force, threat, and intimidation and to insinuate that every charged defendant acquiesced to and agreed with Killman's approach.

During another part of the Government's case-in-chief, an FBI investigator identified Exhibit 73-- a video (extracted from Blaine Cooper's cell phone) depicting a group of men in the boat launch area of the refuge, firing various handguns and semi-automatic rifles as part of some sort of drill or target practice.

A Facebook profile for a "John Killman" remains viewable to the public. The profile does not contain any likeness or photo of Mr. Killman-- only an image of a military style rifle. The majority of the Facebook "friends" claimed by Mr. Killman are individuals who occupied the refuge, along with their family members or associates. The profile was created in January of 2016, after the occupation commenced.

A series of reports of contacts with "CHS 2" document the activities of an informant believed to be the same person posing as "Killman." CHS 2 arrives in Burns on January 23 2016, discusses the presence of a shooting range, documents various types of classes that are now occurring there, and estimates the number of rounds fired. Another CHS (apparently uninformed of Killman's activities) observes on January 25, that there is "much more shooting at the refuge" than before.

Within the last two weeks, defense investigators located and subpoenaed an individual living in Las Vegas who speaks with a French accent and has since admitted to:

- Traveling to the refuge, staying for three days (in a hotel for two nights and in the bunkhouse for one night), and leaving on January 26, 2016 after the arrests of the Bundys and others;
- Using the alias "John Killman"[1];
- Offering firearms "safety" classes to refuge occupiers;
- Being born in Switzerland and serving in the Swiss army for 20 years;
- Being trained in "psy-ops," weaponry, and martial arts;
- Being present for and witnessing the events depicted in Government Ex. 73.

Mr. Killman is now in Portland and was interviewed by two defense counsel and a defense investigator. Immediately following that interview, defense counsel sent a detailed proffer to the Government and asked for confirmation of Mr. Killman's status as an informant or agent. The Government has declined to answer. In the meantime, Mr. Killman is under subpoena and hoping to leave Portland by tomorrow afternoon to resume his training as a police recruit with tribal authorities in Arizona. Defense counsel has communicated with a detective leading the academy training who has confirmed Mr. Killman's need to return to Arizona as soon as possible in order for Mr. Killman to preserve his eligibility to graduate from the tribal police academy.

In order to facilitate Mr. Killman's prompt testimony tomorrow morning, the defense requests that the Government provide the following information and materials in discovery:

(1) Confirmation of Mr. Killman's status as an agent or informant;

(2) The form and amount of any compensation he received;

(3) The agency that arranged for Mr. Killman's work at the refuge;

---

[1] The defense served Mr. Killman under what we believe to be his true name, which we have already proffered to the Government. For purposes of this motion, we will continue to refer to him by his alias, in the event that he is not, in fact, a Government agent or informant.

  (4)  Any photographs taken by Mr. Killman during his work as an informant or agent on this case;

  (5)  Unredacted versions of all of reports in discovery pertaining to Mr. Killman.

The presence and number of spent rounds in the boat launch area became an important and dramatic part of the Government's case in chief. The Government pressed the issue of Mr. Killman's trainings during Mr. Banta's cross examination. None of the charged defendants, and perhaps no one else who occupied the refuge, had the level of expertise necessary to conceive of the training exercises instituted by Mr. Killman. The defense must be permitted to tell the jury that some of the most dramatic evidence of force, threat, or intimidation in this case was created, at least in part, by a paid government informant or agent. If Mr. Killman was dispatched to the refuge, in the waning days of the occupation, to encourage refuge occupiers to engage in mock tactical drills and trainings and to fire weapons on refuge property, then the jury should be able to consider that fact. It is surely relevant to the broader question of whether these defendants assembled at the refuge with the intent to engage in a protest or to prevent federal employees from discharging their duties through a show of military-style force. It's not clear that any defendant, other than Mr. Banta ever participated in Killman's exercises, and Banta, himself, describes it as a one-time lark or diversion that he had never considered before—an explanation that is more plausible when one considers how and why those activities were introduced into the refuge environment.

///

///

///

///

///

///

///

Therefore, the Court should order disclosure of the requested information because it is necessary and material to the defense case, exculpatory under *Brady v. Maryland*, and central to conducting a fair trial and meeting the demands of Due Process.

Respectfully submitted,

/S/     *Tiffany Harris*
Tiffany A. Harris
Standby Counsel for Defendant Shawna Cox


Reviewed and approved by

/S/     *Shawna Cox*
Shawna Cox
Pro Se Defendant